```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION

CATHY S. BUTTS,                    *

     Plaintiff,                    *

vs.                                *
                                        CASE NO. 4:11-CV-60 (CDL)
GEORGIA STATE PATROL DIVISION,     *
DEPARTMENT OF PUBLIC SAFETY,
                                   *
     Defendant.
                                   *
```

O R D E R

Plaintiff, a former Georgia State Patrol employee, alleges that her former employer violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), when it subjected her to a sexually hostile work environment, discriminated against her based on her gender and age, failed to accommodate her disability, and ultimately terminated her employment. Defendant has filed a Motion to Dismiss Plaintiff's *pro se* Complaint (ECF No. 8). In response to that motion, Plaintiff alleged additional facts to address some of the deficiencies pointed out in Defendant's Motion to Dismiss. The Court construes Plaintiff's Response (ECF No. 11) as a motion to amend her Complaint, which the Court grants. To promote

judicial economy, the Court in this Order evaluates whether Plaintiff's "amended" allegations sufficiently state claims for relief.  The Court finds that they do as to Plaintiff's claims for hostile work environment, disparate treatment, and retaliation, but they do not as to Plaintiff's claims under the ADEA and ADA.  Accordingly, as explained more fully below, Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 8) is granted in part and denied in part.

## MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery

2

will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

## BACKGROUND

Plaintiff, proceeding *pro se* at the time, responded to Defendant's Motion to Dismiss by alleging additional facts not contained in her Complaint. Pl.'s Answer to Def.'s Mot. to Dismiss Pl.'s Compl. in Lieu of Answer, ECF No. 11 [hereinafter Pl.'s Resp.]. Although not properly styled as a motion to amend the Complaint, the substance of the Response clearly attempts to allege additional facts to support Plaintiff's claims. In light of Plaintiff's *pro se* status, the Court construes this pleading as a motion to amend the Complaint. *See Newsome v. Chatham Cnty. Det. Ctr.,* 256 F. App'x 342, 344 (11th Cir. 2007) (holding that where *pro se* plaintiff's response to magistrate judge's recommendation alleged new facts, the response should have been construed as a motion to amend the complaint). The Court further finds that the amendments should be permitted because they have been timely filed. "A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(B).

Plaintiff filed her Motion to Amend within twenty-one days of service of Defendant's Motion to Dismiss.  *See* Def.'s Mot. to Dismiss Pl.'s Compl. in Lieu of Answer, ECF No. 8 [hereinafter Def.'s Mot. to Dismiss] (filed on August 15, 2011); Pl.'s Resp. (filed on September 6, 2011); *see also* Fed. R. Civ. P. 6(d) (providing that three days are added when a party must act within a specified time if service is made under Rule 5(b)(2)(C) by mailing it to the person's last known address).  Thus, Plaintiff may amend her Complaint to include the additional allegations as a matter of course under Rule 15(a)(1)(B).  In its Reply, Defendant argues that even considering the new facts alleged by Plaintiff, Plaintiff's allegations still fail to state claims on which relief may be granted.  Reply to Pl.'s Answer to Def.'s Mot. to Dismiss Pl.'s Compl. in Lieu of Answer 1, ECF No. 14.  Accordingly, the Court finds it appropriate to evaluate Defendant's Motion to Dismiss as it applies to Plaintiff's amended allegations and whether they "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The facts, accepting Plaintiff's allegations as true as required at this stage of the proceedings, are as follows.

Plaintiff worked for Defendant as a radio operator from February 2007 through August 2010, when Defendant terminated her employment.  While working for Defendant, troopers at Plaintiff's post constantly bombarded her with sexual innuendoes

4

and sexually explicit language.  One particular trooper, who will simply be referred to in this Order as the "alleged harasser," brought up sexually explicit pictures on his computer, talked about them, and tried to get Plaintiff to look at them.  She would not look at them.  The alleged harasser constantly asked Plaintiff to show him her breasts, which Plaintiff would not do.  Troopers regularly used vulgar language, and even the post commander would use the "F" word in Plaintiff's presence.  This conduct started in 2007 and continued through January 2010.

In August 2009, Plaintiff was diagnosed with sixty percent hearing loss.  Defendant took her off the radio and put her on sick leave.  Defendant refused to give her anything else to do. Plaintiff asked Defendant to help her get hearing aids but she never received a response from Defendant regarding this request. Plaintiff used up all of her sick leave, annual leave and forfeited leave.  Defendant put others in similar situations on administrative leave with pay.  Plaintiff eventually returned to work as a radio operator after obtaining hearing aids without assistance from Defendant.

While working for Defendant, Plaintiff had an affair with her immediate supervisor.  Her immediate supervisor pursued her relentlessly, and Plaintiff "finally succumbed."  Pl.'s Resp. 2. In October 2009, Plaintiff met with Dennis Dixon regarding her

5

affair with her supervisor.  Prior to that meeting, Dixon recommended that Plaintiff and her supervisor be placed on leave without pay for three days and that Plaintiff and the supervisor be assigned to separate posts.  Dixon told Plaintiff that when she returned to work, Defendant would transfer all radio operators from her post in Cuthbert, Georgia to Americus, Georgia.

At the meeting, Plaintiff told Dixon about the sexual harassment and the vulgar language she endured.  Dixon told Plaintiff "his recommendation would have been all it was to it." *Id.*  According to Plaintiff, she reported serious problems that she thought must be addressed.  Plaintiff was advised that no adverse action would be taken against her for reporting the hostile work environment.  Later, however, Dixon told the supervisor with whom Plaintiff had the affair that he was "getting ready to take the Plaintiff down."  *Id.*  Dixon planned to have Plaintiff fired and ignored her allegations.  In November 2009, Plaintiff met with Angie Holt, who worked in the Department of Internal Affairs, and Dan Roach, who worked in the Department of Human Resources, to discuss her hearing loss, her affair with her supervisor, and the hostile work environment.  She was again reassured that no retaliation would result because of her "whistle blowing."  Compl. ¶ 14, ECF No. 1.

On August 19, 2010, Plaintiff met with M.W. McDonough at which time her employment was terminated for misconduct and negligent job performance. She appealed the decision, and the Defendant held a hearing. The appeal board members were Frederick Snellings, Jr., McDonough, Dixon, Holt, Roach, and Melissa Rogers. Plaintiff alleges that these individuals were involved with her termination after she reported the actions of the "good old boys." Pl.'s Resp. 2. Defendant did not allow Plaintiff's attorney to attend the meeting. The board affirmed her dismissal effective August 30, 2010.

Plaintiff alleges that Defendant sought to "pad her dismissal" in a termination letter that included events that occurred months before and had never been brought up previously by Defendant as justification for the termination. Pl.'s Resp. 3. Plaintiff alleges that she always met expectations on her reviews. She also alleges that other employees received significantly less severe discipline than she received. Her supervisor, with whom she had the affair, received thirty days of administrative leave with pay, a demotion, and a transfer. Defendant found troopers from Plaintiff's post guilty of sexual harassment and hostile work environment and prohibited them from receiving a promotion for two years. Plaintiff's alleged harasser received a bad write-up and was prohibited from receiving a promotion for two years. Plaintiff further alleges,

7

however, that the two year prohibition against promotions was meaningless because Defendant had a moratorium on promotions during that time. Plaintiff alleges that Defendant purposefully withheld its discipline of Plaintiff until after the 180 day window for Plaintiff to complain to the EEOC had closed.

Plaintiff was 54 years old when Defendant terminated her employment, and Defendant replaced her with an employee less than 40 years of age.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 2010. She received a right-to-sue letter from the EEOC on March 20, 2011.

## DISCUSSION

In support of its Motion to Dismiss Plaintiff's Complaint for failure to state a claim, Defendant argues that Plaintiff simply makes bald legal conclusions unaccompanied by sufficient factual support to meet the pleading standards set forth in *Twombly* and *Iqbal*. The Court will evaluate each of Plaintiff's claims to determine whether she alleged sufficient facts for each cause of action to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

**I.   Hostile Work Environment Claim**

Plaintiff alleges Defendant subjected her to a hostile work environment based on her sex.  In order to prove a hostile work environment, a plaintiff must demonstrate that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was based on the employee's sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc).

Defendant argues that Plaintiff failed to assert sufficient facts regarding the severity and pervasiveness of the conduct to support a hostile work environment claim.  The Court disagrees. Plaintiff alleges that over a period of three years, troopers at her post constantly bombarded her with sexual innuendoes and sexually explicit language.  Her alleged harasser brought up sexually explicit pictures on his computer, talked about them, and tried to get Plaintiff to look at them.  He also regularly asked Plaintiff to show him her breasts.   Given the repeated and constant nature of the conduct alleged, the Court finds Plaintiff has alleged facts demonstrating that the harassment

was sufficiently severe or pervasive to alter the conditions of her employment.

Defendant also argues that Plaintiff failed to allege that the objectionable conduct was unwelcomed. Plaintiff alleges that she refused to look at the sexually explicit pictures her alleged harasser attempted to show her, and she rejected his constant requests to show him her breasts. *See id.* (listing examples of unwelcome harassment, including "sexual advances, requests for sexual favors, and other conduct of a sexual nature"). Plaintiff also alleges that she complained multiple times about the hostile work environment. These allegations sufficiently demonstrate the conduct was unwelcomed.

The Court finds that Plaintiff has alleged sufficient facts to put Defendant on notice of a plausible hostile work environment claim. Accordingly, Defendant's Motion to Dismiss Plaintiff's hostile work environment claim is denied.

**II. Disparate Treatment Claim**

Defendant contends that Plaintiff has failed to adequately allege sufficient facts to establish a prima facie case of gender based disparate treatment. To establish a prima facie case of disparate treatment, Plaintiff must show that: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably

10

than she was treated; and (4) she was qualified for the job. *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam). To determine whether employees are similarly situated for a claim of discriminatory discipline, the Court evaluates whether the employees were involved in the same or similar conduct but were disciplined in different ways. *Id.*

Having reviewed Plaintiff's allegations, the Court finds that Plaintiff's gender based disparate treatment claim sufficiently states a claim, and therefore should not be dismissed at this stage. This ruling, however, should not be construed to mean that the same ruling will be made at the summary judgment stage. At that stage, a different legal standard will be applied which may lead to a different result.

### III. Retaliation Claim

Plaintiff alleges that Defendant retaliated against her by firing her because she "blew the whistle" on the hostile work environment at her post. Pl.'s Resp. 3. To state a retaliation claim, a plaintiff must allege sufficient facts that show that she engaged in a statutorily protected activity, she suffered a materially adverse employment action, and there was some causal relation between the two events. *Brown v. Metro. Atlanta Rapid Transit Auth.*, 261 F. App'x 167, 174 (11th Cir. 2008).

Plaintiff has clearly alleged that she complained about being subjected to sexual harassment and a sexually hostile work

11

environment. She further alleges that after making those complaints she was terminated and that no legitimate reason existed for her termination. Therefore, she alleges that the complaints caused Defendant to retaliate against her and fire her. Plaintiff's allegations are obviously sufficient to establish that Plaintiff alleged that she engaged in protected activity and suffered an adverse employment action.

Defendant contends Plaintiff failed to allege facts demonstrating a causal connection between her complaints and her termination. Defendant argues Plaintiff alleged no facts to support her assertion that the individuals involved in her termination knew of her reports. This argument ignores Plaintiff's allegation that she reported the hostile work environment to Dixon and again reported the hostile work environment to Holt and Roach. Dixon, Holt, and Roach sat on the board that heard Plaintiff's appeal of her termination. Thus, the Court rejects Defendant's contention that Plaintiff did not allege sufficient facts showing Defendant knew about her complaints.

Defendant further argues that Plaintiff's factual allegations do not establish a causal connection based on temporal proximity. Plaintiff, however, alleged facts of causation beyond mere temporal proximity. She claims that Dixon said he was getting ready to take Plaintiff down after she met

with him and complained about the hostile work environment. Plaintiff alleges Dixon was going to get her fired rather than do anything about the problems at her post. Dixon sat on the board at her termination appeal. Plaintiff also claims that after she told Dixon about the hostile work environment, he told her that his disciplinary recommendation of three days without pay and a transfer "would have been all there was to it." Pl.'s Resp. 2. This statement suggests that if Plaintiff had not complained, her discipline would have been less severe than her ultimate termination. The Court finds that these allegations sufficiently support a causal connection between the two events for purposes of a motion to dismiss. Plaintiff has adequately stated a retaliation claim, and Defendant's Motion to Dismiss her retaliation claim is denied.

**IV. Age Discrimination Claim**

Defendant seeks dismissal of Plaintiff's age discrimination claim based upon sovereign or Eleventh Amendment immunity. It is undisputed that Plaintiff's claim is against an agency of the state and therefore is subject to dismissal unless the state's immunity has been abrogated. The ADEA does not abrogate the States' sovereign immunity for suits by private individuals. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000). Therefore, Plaintiff's claim for age discrimination must be dismissed. *See Stephens v. Ga. Dept. of Transp.*, 134 F. App'x

320, 324 (11th Cir. 2005) (finding the plaintiff's ADEA claim barred by sovereign immunity because the Georgia Department of Transportation, as an arm of the state, was entitled to the same sovereign immunity as the state itself).

**V.     Disability Discrimination Claim**

Defendant also seeks dismissal of Plaintiff's disability discrimination claims based on sovereign or Eleventh Amendment immunity. Plaintiff fails to specify whether she brings her disability discrimination claim pursuant to Title I or Title II of the ADA. The Eleventh Amendment bars private individuals from filing suits for money damages against States under Title I. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001). Accordingly, Plaintiff's claim under Title I of the ADA is barred by sovereign immunity and is dismissed.

The Eleventh Circuit has not addressed the issue of whether employment discrimination claims under Title II of the ADA are barred against a state because of sovereign immunity. Because the Court finds that Plaintiff does not state a claim under Title II, the Court does not find it necessary to address this issue of first impression. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

14

entity." 42 U.S.C. § 12132. The Eleventh Circuit recognizes employment discrimination claims as cognizable under Title II. *Bledsoe v. Palm Beach Cnty. Soil and Water Conservation Dist.*, 133 F.3d 816, 825 (11th Cir. 1998). A plaintiff proceeding under Title II must prove: (1) that she is a qualified individual with a disability; (2) that she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

Plaintiff alleges that she was diagnosed with sixty percent hearing loss. The Court finds that she has sufficiently alleged a disability. According to Plaintiff, she requested that Defendant help her get hearing aids, and the Defendant failed to respond to her request. After her diagnosis, Defendant took her off the radio, put her on sick leave, and refused to give her anything else to do. She exhausted her sick leave, annual leave and forfeited leave as a result. Plaintiff claims she returned to her job as a radio operator after obtaining hearing aids without help from Defendant.

Based on these allegations, the Court concludes that the facts alleged do not demonstrate a plausible claim under Title

II. The Court acknowledges that Title II requires public entities to take appropriate steps to ensure effective communication with disabled individuals, including furnishing appropriate auxiliary aids and services to individuals with disabilities. *Id.* at 1081-82. Title II, however, does not require public entities to provide disabled individuals with individually prescribed devices, such as hearing aids. 28 C.F.R. § 35.135. Accordingly, Plaintiff's claim that Defendant violated Title II of the ADA by failing to provide her with hearing aids does not state a claim upon which relief may be granted. The Court grants Defendant's Motion to Dismiss Plaintiff's ADA claim under Title II.

CONCLUSION

Having reviewed Plaintiff's Complaint, as amended by her Response to Defendant's Motion to Dismiss, the Court denies Defendant's Motion to Dismiss Plaintiff's hostile work environment, disparate treatment, and retaliation claims, and the Court grants Defendant's Motion to Dismiss Plaintiff's ADEA and ADA claims. Thus, Defendant's Motion to Dismiss (ECF No. 8) is granted in part and denied in part.

Plaintiff is ordered to file an Amended and Restated Complaint within twenty-one days of today's Order that incorporates into one Amended and Restated Complaint all of her

allegations from her previously filed Response to Defendant's Motion to Dismiss.

IT IS SO ORDERED, this 17th day of November, 2011.

S/Clay D. Land  
CLAY D. LAND  
UNITED STATES DISTRICT JUDGE